IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**LabMD, Inc.**

           **Plaintiff,**

**v.**                                     1:14-cv-00810-WSD

**FEDERAL TRADE COMISSION,**

           **Defendant.**

## OPINION AND ORDER

This matter is before the Court on LabMD's ("Plaintiff") Motion for Preliminary Injunction [2] and the Federal Trade Commission's ("Defendant" or "FTC") Motion to Dismiss the Plaintiff's Complaint [13]. A hearing on the Motion for Preliminary Injunction was conducted on May 7, 2014.

**I.     BACKGROUND**

      A.     Factual and Procedural History

Plaintiff is a small medical laboratory based in Atlanta, GA, that provided doctors with cancer-detection services. In January, 2010, the Defendant commenced an investigation into the Plaintiff's data security practices regarding

Protected Health Information ("PHI")[1] based upon the claim that sensitive information in the Plaintiff's possession and control had been disclosed by means of a peer-to-peer file sharing network available to the public.  Three and a half years later, the Defendant issued an Administrative Complaint against the Plaintiff in which it alleged that there was "reason to believe" that Plaintiff may have engaged in "unfair . . . acts or practices," under 15 U.S.C. § 45(a)(1) of the Federal Trade Commission Act ("Section 5"), because Plaintiff failed to provide reasonably adequate security for patient information retained on its internal network.  The Administrative Complaint also alleged that Plaintiff had the capacity to prevent the vulnerabilities in its data security infrastructure "at relatively low cost using readily available security measures," and that the ultimate consumers allegedly harmed due to the Plaintiff's lax data security were unable to protect themselves because they "ha[d] no way of independently knowing" about the alleged disclosures.  Def.'s Mot. to Dismiss and Resp. to Pl.'s Mot. for Prelim. Inj. at 7.

The Administrative Complaint cited two specific examples of alleged data

---

[1] PHI refers to individually identifiable health information, including the individual's name, social security number, address, birth date, history of mental and physical health condition, provision of health care, and payment history for the provision of health care.

security failures at LabMD. First, that LabMD failed to discover that its billing manager had installed a peer-to-peer file sharing application known as Limewire on his or her work computer, and a file that contained personal information on approximately 9,300 consumers was accessible to any individual, who used or had access to Limewire's software. Second, that the police department in Sacramento, California arrested alleged identity thieves, and found, in their possession, LabMD's documents containing sensitive pertinent personal information on individuals.[2]

On November 12, 2013, Plaintiff moved the Commission to dismiss the Administrative Complaint on the grounds that the FTC had no statutory authority to address the data security practices of private companies under Section 5, and that the application of Section 5 to LabMD's data security practices violated the Due Process Clause of the United States Constitution. On January 16, 2014, the Commission denied the Plaintiff's Motion to Dismiss, concluding that Section 5 vests the FTC with authority to address a private company's data security practices "as unfair . . . acts or practices" if they are found to be so deficient that it "causes

---

[2] At the May 7, 2014, Preliminary Injunction hearing, the FTC informed the Court that it was unaware whether the alleged identity thieves arrested in Sacramento received documents containing PHI as a consequence of LabMD's data security failures.

or is likely to cause substantial injury to consumers [that] is not reasonably avoidable by consumers themselves and [the harm is] not outweighed by countervailing benefits to consumers or competition." 15 U.S.C. § 45(n). The Commission also found that the Administrative Complaint sufficiently stated a claim that the Plaintiff engaged in "unfair . . . acts or practices" because of its alleged failure to maintain adequate data security, and stressed that the "ultimate decision on LabMD's liability will depend on the factual evidence to be adduced in this administrative proceeding." Pl.'s Ex. 3 at 18.

The claims alleged in the Administrative Complaint have been referred to an administrative law judge ("ALJ") in the underlying adjudicatory proceeding. On May 20, 2014, the ALJ will conduct an evidentiary hearing to determine whether the Plaintiff's data security practices violated Section 5. After the ALJ issues an initial decision, either party may appeal to the Commission for *de novo* review of the ALJ's factual findings and legal conclusions. 5 U.S.C. § 557(b). If the Commission concludes that the Plaintiff engaged in "unfair . . . acts or practices," and enters a cease and desist order, the Plaintiff has a statutory right to "obtain a review of such order in the court of appeals." 15 U.S.C. § 45(c).

On November 14, 2013, the Plaintiff filed a complaint against the FTC in the United States District Court for the District of Columbia, seeking to enjoin the

enforcement action on the grounds that (1) the FTC abused its statutory authority by regulating LabMD's data security practices, (2) the FTC's application of Section 5 to LabMD's data security practices violated the Due Process Clause, and (3) the FTC brought the enforcement action to retaliate against LabMd's President's public criticism of the agency.  On December 23, 2013, the Plaintiff filed in the Eleventh Circuit a Motion to Stay the administrative proceedings, arguing that a stay was necessary to prevent irreparable harm, including on the grounds that the FTC's application of Section 5 to LabMD's data security practices lacked statutory authority, and the FTC's actions were *ultra vires* and unconstitutional.  On February 18, 2014, the Eleventh Circuit, *sua sponte*, dismissed the Plaintiff's petition for lack of jurisdiction.

The Eleventh Circuit concluded that its authority, under § 45(c), did not extend beyond review of a final cease and desist order.  The Eleventh Circuit, however, "[did] not express or imply any opinion about whether a district court has jurisdiction to hear [the plaintiff's] claims or about the merits of those claims."

On February 19, 2014, the Plaintiff voluntarily dismissed its complaint pending before the United States District Court for the District of Columbia.  A month later, the Plaintiff filed a Verified Complaint ("Complaint") for Declaratory and Injunctive relief in this Court.  The Complaint alleges that (1) the FTC action

is arbitrary and capricious under the Administrative Procedures Act ("APA") because the FTC does not have the statutory authority to regulate PHI under Section 5; (2) the FTC action is an *ultra vires* act that exceeds its congressional and constitutional authority; and (3) the FTC's application of Section 5 to LabMD's data security practices violates the requirements of fair notice, and the right to a fair hearing in a fair tribunal under the Due Process Clause of the United States Constitution. The Complaint also alleges that the FTC violated LabMD's First Amendment right to free speech by filing the Administrative Complaint. On March 20, 2014, Plaintiff filed a Motion for Preliminary Injunction to enjoin the ongoing administrative proceeding before the ALJ, and to enjoin the FTC from asserting any further data security actions against LabMD.

At the core, LabMD's claims in this matter are identical to those filed in the United States District Court for the District of Columbia and the Eleventh Circuit. LabMD alleges that Section 5 does not authorize an action for alleged security breaches involving PHI that is not provided to LabMD by patients but by physicians ordering laboratory tests for their patients. It claims also that PHI is regulated by the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and the Health Information Technology for Economic and Clinical Health Act (HITECH) of 2009, which discredits that the FTC has the authority to

regulate data security under Section 5.  LabMD further alleges that the FTC has not published any requirements for the protection of patient information, and thus LabMD is not on notice of what protections the FTC now claims were required.  LabMD claims that the FTC brought its enforcement action against LabMD to retaliate against its President's public criticism of the FTC, which were published through the press, social media, and in a book entitled The Devil Inside the Beltway: The Shocking Expose of the US Government's Surveillance and Overreach into Cybersecurity, Medicine and Small Business.[3]

On April 7, 2014, the FTC replied to LabMD's Motion for Preliminary Injunction, and moved under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Complaint for lack of jurisdiction and moved under Rule 12(b)(6) to dismiss for failure to state a claim.  On April 11, 2014, LabMD filed its Response in Opposition to the FTC's Motion to Dismiss.  On April 16, 2014, the FTC replied to LabMD's Response to its Motion to Dismiss the Complaint.

---

[3] At the May 7, 2014 hearing, Mr. Daugherty testified that FTC employees accessed his blog 75 times shortly after he criticized the FTC for bringing an enforcement action against LabMD.  Preliminary Injunction Hr'g Tr., May 7, 2014, at 23: 9-20.  Counsel for the FTC did not know why FTC personnel repeatedly accessed Mr. Daugherty's blog shortly after the criticisms were published, but surmised that a possible explanation for accessing the blog was that FTC personnel wanted to ensure that Mr. Daugherty's free speech rights were not impeded.  Id. at 24-28.

## II.   DISCUSSION

### A.   Legal Standard

#### 1.   *Motion to Dismiss*

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). The Court, however, is not required to accept a plaintiff's legal conclusions.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., 132 S. Ct. 1702 (2012).  The Court also will not

"accept as true a legal conclusion couched as a factual allegation." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.[4]

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions

---

[4] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." Id. at 563.

masquerading as facts will not prevent dismissal.") (citations omitted).[5]

B.  Analysis

Under § 704 of the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  "The requirement of a final agency action has been considered jurisdictional.  If the agency action is not final, the court therefore cannot reach the merits of the dispute."  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003) (internal citations and quotation marks omitted).  An agency action is considered final when two requirements are met: (1) the action marks the "consummation of the agency's decisionmaking process"—it must not be of a tentative or interlocutory nature, and (2) the action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow."  Bennett v. Spear, 520 U.S. 154, 177-78 (1994).  A non-final agency action is one that "does not itself adversely affect the complainant but only affects his rights adversely on the contingency of

---

[5] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

future administrative action." Rochester Tel. Corp. v. United States, 307 U.S. 125, 130 (1939).

LabMD contends that the Commission's interlocutory decision to deny its Motion to Dismiss the Administrative Complaint is a final agency action because the Commission has concluded that Section 5 allows the FTC to regulate PHI retained by medical service providers, and, that the FTC is authorized to impose obligations on those providers who maintain PHI even if it supplements the requirements of other federal statutes. LabMD also argues that the FTC has treated the Commission's Order as a final agency action because the FTC submitted the Order to the Eleventh Circuit and the District Court of New Jersey as supplemental legal authority, requesting those courts to afford Chevron deference to the Commission's interpretation of Section 5.

While the Eleventh Circuit has not directly addressed the issue, those courts that have universally hold that a direct attack on the agency's statutory or constitutional authority to conduct an investigation or commence an enforcement action does not allow a plaintiff to evade administrative review or avoid administrative procedures. Aluminum Co. of America v. United States, 790 F.2d 938, 942 (D.C. Cir. 1986) (observing that a claim attacking an agency's assertion of jurisdiction as beyond statutory authority does not make a difference to the

finality analysis because the purpose of finality is to prevent piecemeal "consideration of rulings that may fade into insignificance by the time the initial decisionmaker disassociates itself from the matter."); see also VeldHoen v. United States Coast Guard, T.A., 35 F.3d 222 (5th Cir. 1994); Dairymen, Inc. v. FTC, 684 F.2d 376, 378-79 (6th Cir. 1982).

The Commission's denial of LabMD's Motion to Dismiss the Administrative Complaint on the grounds that the FTC does not have the statutory authority to regulate data security practices under Section 5 is the type of Order that "ha[s] long been considered nonfinal." DRG Funding Corp. v. Secretary of HUD, 76 F.3d 1212, 1215 (D.C. Cir. 1996). The Commission's Order is the equivalent of a district court's decision to deny a motion to dismiss, "which—unlike a final order ending the case—assures its continuation." Id. LabMD's contention that the Commission's interlocutory Order is a final agency action because it concluded that the FTC has statutory authority to regulate PHI under Section 5 has specifically been rejected by other courts.

In American Airlines Inc. v. Herman, for example, the plaintiff argued that it would be "futile for it to pursue the administrative process because the DOL already has finally and definitively rejected each of [the] challenges to its statutory and regulatory authority." 176 F.3d 283, 292 (5th Cir. 1999). The Fifth Circuit

rejected the plaintiff's argument, and held that "the requirement that the reviewable order be definitive in its impact on the rights of the parties is something more than a requirement that the order be unambiguous in legal effect. It is a requirement that the order have some substantial effect *which cannot be altered by subsequent administrative action*." Id. (internal quotation marks and citations omitted) (emphasis in original). Because of the possibility that the plaintiff could prevail on the merits in the administrative proceeding, the Fifth Circuit required the plaintiff to submit to the administrative proceeding. Id.

      The Court concludes that it does not have jurisdiction over this action because even if it determines that the Commission's position on the FTC's authority to regulate PHI under Section 5 was definitive, the mere assertion of jurisdiction does not impose or fix an obligation on LabMD from which "legal consequences may flow." Bennett, 520 U.S. at 177-78. The Commission's denial of LabMD's Motion to Dismiss the Administrative Complaint is not a final agency action, and the FTC's decision to submit the Commission's Order to other courts as "supplemental authority" is a litigation tactic that does not render final a Commission Order that is not. The possibility that LabMD may prevail on the merits if the ALJ, or the Commission, concludes that it did not violate Section 5 will moot its judicial challenge and render it unnecessary for the Court to intervene

13

in an ongoing administrative proceeding.[6]  American Airlines Inc., 176 F.3d at 292.  See also FTC v. Standard Oil Co. of California, 449 U.S. 232, 242 (1980) (observing that "judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise," and that "intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary.") (citations omitted).

     LabMD alleges that the burdens imposed by the FTC investigation and the requirement to submit to an administrative proceeding crippled its day to day business because it had to effectively shut down its operations, lay off more than two dozen employees, and cannot procure medical malpractice and property insurance to remain a going concern.  Even if the Court accepts these allegations as true, the expense and burdens associated with complying with an agency's information requests and submitting to an administrative proceeding do not qualify as legally recognized harms, and do not provide a basis upon which to grant

---

[6] The Court believes that the likelihood of a favorable jurisdictional or merits outcome for LabMD is slight, but that belief cannot govern the legal issues addressed in this Order.  As the Court noted at the May 7, 2014 hearing, the authority of the FTC to enlarge its regulatory activity in the data security area presents an interesting and likely important jurisdictional issue that needs to be resolved promptly.

LabMD relief.  Standard Oil Co. of California, 449 U.S. at 244 ("litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury" because "the expense and annoyance of litigation is part of the social burden of living under government.") (internal citations and quotation marks omitted); see also Imperial Carpet Mills, Inc. v. Consumer Prod. Safety Comm'n, 634 F.2d 871, 874 (5th Cir. Unit B Jan. 1981)[7] (holding that "the burden of defending against the Complaint; the expense of complying with the Commission's anticipated final order; the resulting bad publicity; and the potential for a dangerous loss of credit" do not justify intervention into administrative agency action).[8]

---

[7] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit handed down prior to October 1, 1981.  661 F.2d 1206, 1209-10 (11th Cir. 1981).

[8] LabMD's claim that the FTC investigation had a crippling effect on its business is questionable in light of Mr. Daugherty's testimony at the Preliminary Injunction hearing.  In 2010, the FTC began its investigation into LabMD's data security practices.  Four years later, in January, 2014, LabMD decided to no longer provide cancer detection services, which is the essence of its business operations.  Preliminary Injunction Hr'g Tr., at 6: 20-25.  LabMD continued to operate as a going concern throughout the FTC investigation until the end of 2013.  In 2013, LabMD retained 25 to 30 employees on its payroll, and it continued to generate a profit margin of approximately 25% until 2013 when the company experienced a loss of half a million dollars.  Id. at 11: 1-25.  The company "never had problems getting insurance prior to 2013."  Id. at 12: 6-8.  The evidence presented at the Preliminary Injunction hearing demonstrates that an insurer's decision to deny tail risk coverage to LabMD on account of the FTC investigation and administrative

LabMD's view that the Court can address and review its constitutional claims based on the Due Process Clause and the First Amendment regardless of whether there is a final agency action under the APA is contrary to established precedent.  In Ticor Tile Ins. Co. v. FTC, the plaintiff mounted a facial challenge to the constitutionality of Section 5, arguing that the FTC had definitively concluded that the provision was constitutional, and that the FTC's position constituted final agency action reviewable in a federal court before the consummation of the administrative proceeding.  814 F.2d 731, 738-743, 746-749 (D.C. Cir. 1987).  The D.C. Circuit affirmed the dismissal of plaintiff's complaint because there was no final agency action, the plaintiff did not exhaust its remedies in the administrative proceeding, and the case was not ripe for review.  Id. at 732; Id. at 748 (Williams, J.) (explaining that even if unconstitutional actions are accepted as "heavier" than "those of statutory illegality, the constitutional dimension of appellants' burden entails a concern that militates powerfully against

---

proceeding was not made until January 13, 2014, which is a week after LabMD had decided to discontinue its cancer detection services.  See Pl.'s Ex. 15, attached to Pl.'s Ex. List.  At the Preliminary Injunction hearing, Mr. Daugherty, conceded that the implementation of the Affordable Care Act, and its resulting effect on cost containment and market consolidation negatively impacted LabMD's operations, and "creat[ed] huge anxiety, destruction, consolidation in our customer base."  Id. at 52: 9-21.  Mr. Daugherty also conceded that LabMD's future "depend[ed] on Obamacare, and other than that I don't know."  Id. at 54: 1-4.

16

immediate review: the fundamental rule of judicial restraint, forbidding resolution of constitutional questions before it is necessary to decide them.") (internal citations and quotation marks omitted).

In the absence of final agency action, LabMD's alleged constitutional injuries are not currently ripe for review. North Carolina State Bd. of Dental Examiners v. FTC, 768 F. Supp. 2d 818, 824 (E.D.N.C 2011) (holding that in the absence of a final cease and desist order from the Commission, plaintiff has failed to show that its constitutional rights have been or are being violated); see also E. I. Dupont de Nemours and Co. v. FTC, 488 F. Supp. 747, 754 (D. Del. 1980) (rejecting the plaintiff's claim that the FTC violated its First Amendment rights by filing a complaint because the FTC did not direct the plaintiff to stop engaging in speech, and there was no indication that significant costs or sanctions on the use of protected expression would be imposed on the plaintiff to stifle its free speech as the "only 'threat' that is involved in the administrative proceedings is the threat that a cease and desist order will be issued [and] . . . no other sanctions or penalties can be imposed . . . as the result of those proceedings.").

Finally, LabMD asserts that even if the Commission's Order regarding its jurisdiction does not constitute final agency action, the Leedom exception applies, allowing the Court to review LabMD's constitutional and *ultra vires* claims.

Under the Leedom exception, federal courts typically lack jurisdiction to enjoin an ongoing administrative proceeding, Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598 (1950), unless the agency commits an "egregious error" that plainly violates an unambiguous and mandatory provision of a federal statute, and the aggrieved party has no adequate or meaningful opportunity to vindicate its rights. Leedom v. Kyne, 358 U.S. 184 (1958); American Airlines Inc., 176 F.3d at 293-94.  The Court concludes that the Leedom exception does not apply here because the FTC's application of Section 5 to the data security practices of private companies is not contrary to an unambiguous and mandatory provision of a federal statute.  In American Airlines Inc., the Fifth Circuit specifically held that the Leedom exception does not apply to a "dispute over whether an agency charged with a statute's implementation has interpreted it correctly."  176 F.3d at 293.  That is the crux of the Plaintiff's Complaint in this matter, but it is insufficient to invoke the exception under Leedom.  LabMD can obtain meaningful and adequate review of its jurisdictional challenge in the Court of Appeals, if that is necessary.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's Motion to Dismiss the Complaint for lack of jurisdiction is **GRANTED** [13].

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Preliminary Injunction is **DENIED AS MOOT** [2].

**SO ORDERED** this 12th day of May 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE